**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MEGAN HARRIS,**<br>**Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-5845** |
| **HENRY BASCO,**<br>**Defendant.** | : | |

**MEMORANDUM**

**SCOTT, J.** **JANUARY 31, 2025**

Plaintiff Megan Harris filed this *pro se* civil action against Defendant Henry Basco, alleging that he violated federal and state laws when he sold Harris a used car. Harris also moves for leave to proceed *in forma pauperis*. For the following reasons, the Court will grant the request to proceed *in forma pauperis* and will dismiss the Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. FACTUAL ALLEGATIONS[1]

Harris states that she has a disability and requires reliable transportation for medical appointments. (Compl. (ECF No. 2) at 2.) She purchased a 2019 Chevrolet Malibu LT from Basco for $8,800 in April 2022. (*Id.*) Harris claims that Basco represented that the car's mileage was 99,000 miles, but she discovered when she test drove the car that the true mileage was 101,678 miles. (*Id.*) Apparently, she purchased the car anyway and discovered that Basco had failed to disclose "significant mechanical defects [of the car], including a failure to accelerate properly, worn brakes, and damaged rotors." (*Id.*) Harris requested that her money be refunded

[1] The facts set forth in this Memorandum are taken from the Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

or that the car be repaired, but Basco refused.[2] (*Id.*) Harris states that Basco nonetheless provided a loaner vehicle in response to her request. (*Id.* at 3.) Harris claims that the loaner vehicle had fake tags, and that she was pulled over by state police, who ordered that the car be towed and impounded. (*Id.*) She states that Basco would not release the title of the purchased car to her because she refused to pay for the towing and impoundment costs of the loaner vehicle. (*Id.*)

Harris asserts statutory claims under the Magnuson-Moss Warranty Act (Count I) and the Vehicle Information and Cost Savings Act (the "Odometer Act" (referred to by Harris as the "Truth in Mileage Act")) (Count II), as well as claims under state law for fraudulent misrepresentation and for violations of consumer protection statutes.[3] (*Id.* at 3-5.) She seeks compensatory damages and punitive damages, and requests that her damages be trebled. Harris asks for an order compelling Basco to release the title of the vehicle.

## II. STANDARD OF REVIEW

The Court will grant Harris leave to proceed *in forma pauperis* because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Harris's Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). '"At this early stage of the litigation,' '[the Court will] accept the

[2] Harris claims that she subsequently learned that the vehicle needed "extensive repairs, including a new transmission and engine, due to the acceleration issues present since the time of sale." (Compl. at 2.)

[3] The Complaint contains separate counts alleging fraudulent misrepresentation (Count III), violations of the New Jersey and Pennsylvania consumer protection statutes (Counts IV and V), and for "failure to transfer the title" of the car (Count VI). (Compl. at 3-5.)

facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Harris is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245).

Additionally, a court may dismiss a complaint based on an affirmative defense such as the statute of limitations when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Whitenight v. Cmwlth. of Pa. State Police*, 674 F. App'x 142, 144 (3d Cir. 2017) (*per curiam*) ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." (citations omitted)).

Finally, when allowing a plaintiff to proceed *in forma pauperis*, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d

Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III. DISCUSSION

### A. Magnuson-Moss Warranty Act Claim (Count I)

The Magnuson-Moss Warranty Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, [or] implied warranty" may seek damages or equitable relief by filing a civil action in state or federal court. 15 U.S.C .§ 2310(d)(1). In order to file an action pursuant to the Act in federal court, there must be more than $50,000 in controversy, exclusive of interests and costs. *See id.* § 2310(d)(3)(B). Meeting the amount in controversy threshold requires a plaintiff to "allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the allegedly defective vehicle." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) (citing *Voelker v. Porsche Cars N. Am., Inc.*, 348 F.3d 639, 643 (7th Cir.2003) *superseded on rehearing by Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003)). Only certain costs may be included in the amount in controversy figure, and punitive damages and those damages sought via pendant state law claims cannot be included in the calculation. *See id.* ("Treble damages may not be assessed in a Magnuson–Moss count."); *Nottingham v. Nat'l Auto. Distrib. Network, Inc.*, No. 19-1618, 2010 WL 11707685, at *1 n.1 (E.D. Pa. Mar. 5,

2010) (punitive damages and damages sought in pendant state law claims may not used to calculate the jurisdictional threshold amount for a Magnuson-Moss claim in Pennsylvania).

Harris has not pled sufficient facts to satisfy the amount in controversy requirement under the rubric mandated by *Samuel-Bassett* (cost of the replacement vehicle, minus the value of the Malibu and the value she received from it). *See id.*, 357 F.3d at 402; *Hurley v. BMW of N. America, LLC*, No. 18-5320, 2020 WL 1624861, at *4 (W.D. Pa. Apr. 2, 2020) (noting that the Court of Appeals adopted specific pleading standards for establishing jurisdiction under Magnuson-Moss in *Samuel-Bassett*). Beyond that, a generous reading of the *pro se* Complaint reveals little information about the amount of damages Harris could have sustained. The sole monetary amount she references is the $8,800 sales price for the car. While Harris claims that she subsequently learned that "extensive" repairs were necessary, she does not say how much they cost. The amount in controversy calculation excludes treble, punitive, and emotional distress damages. *See Nottingham*, 2010 WL 11707685, at *1 n.1. Harris has not, accordingly, met the amount in controversy required to bring a Magnuson-Moss claim.

Even if it did meet the threshold, Harris has not pled sufficient facts at this juncture for the claim to proceed. She contends that Basco breached an implied warranty of merchantability because he sold her a defective car that was unfit for normal use. (Compl. at 3.) State law governs implied warranty claims under Magnuson-Moss. *See* 15 U.S.C. § 2301(7). To the extent that Pennsylvania law applies here, a warranty of merchantability is implied in contracts for the sale of goods when the seller is "a merchant" of "goods of that kind." 13 Pa. Cons. Stat. § 2314(a). The warranty requires that goods are "fit for the ordinary purpose for which such goods are used." *Id.* § 2314(b)(3). A plaintiff must allege the existence of implied warranty, a breach of the implied warranty, and that the breach of warranty was the proximate cause of her

loss. *Bruno v. Roundhouse Cycles, Inc.*, No. 24-0005, 2024 WL 4307525 at *4 (W.D. Pa. Sept. 26, 2024).

Harris has not plausibly pled the implied warranty element. In Pennsylvania, "the implied warranty of merchantability applies to every sale of goods *unless specifically disclaimed*." *Id.* (citations omitted, emphasis added). Harris has provided no information at all about the agreement of sale, warranties made by the seller, or whether Basco disclaimed warranties. If warranties were disclaimed, Harris would not have an implied warranty for the car. For example, "an 'as is' clause removes any implied warranties for the product because the buyer has notice that he is purchasing the product in the condition he found it." *Smith v. Kershentsef*, No. 18-3840, 2019 WL 558225, at *4 (E.D. Pa. Feb. 12, 2019) (citing *Morningstar v. Hallett*, 858 A.2d 125, 130 (Pa. Super. Ct. 2004)). Without any facts alleged concerning the sales agreement, Harris does not allege a plausible breach of implied warranty claim under Magnuson-Moss. *Smith*, 2019 WL 558225, at *4 ("as discussed above, the sales agreement and non-warranty notice contained clear and conspicuous language that the vehicle was sold 'as-is' and without any warranty, sufficiently disclaiming any implied warranty on the vehicle"). The Magnuson-Moss claim will accordingly be dismissed, but Harris will be afforded an opportunity to amend her Complaint to address these identified deficiencies with her claim.

**B. Federal Odometer Act Claim (Count II)**[4]

The Odometer Act prohibits altering a vehicle odometer and requires transferors to provide certain disclosures concerning the mileage of a vehicle upon its transfer. *See* 49 U.S.C. §§ 32701(b), 32705(a). A private party may bring a civil action against a person who violates the provisions of the Act or the applicable regulations "with the intent to defraud," within two years of the date the consumer discovered or should have discovered the alleged fraud. *Id.* § 32710(a), (b); *Vartelov v. Montgomeryville Acura*, No. 21-5226, 2023 WL 3060765, at *5 (E.D. Pa. Apr. 24, 2023). To be held liable, the sued party must be a "transferor;" that is, the party must have an ownership interest in the vehicle or sign an odometer disclosure statement as an agent for the transferor. *See* 49 C.F.R. § 580.3 (2019). Among the actions prohibited, sellers cannot "disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer." 49 U.S.C. § 32703; *Vartelov*, 2023 WL 3060765 at *5. A claim must be brought within the two-year statute of limitations found in 42 U.S.C. § 32710(b).

Harris alleges that Basco represented that the car's mileage was 99,000, but that she "discovered" the true mileage was 101,678 miles while test driving the car. (Compl. at 2.) She

[4] Count VI of the Complaint alleges "Failure to Transfer Title (49 U.S.C. § 32705 and Pennsylvania State Law)." The federal statute cited is also a part of the Odometer Act requiring disclosures of a car's mileage by a transferor. *See generally* 49 U.S.C. § 32705. As explained further in the text of this Memorandum, under the Odometer Act, a consumer may bring a private cause of action against the seller of a car for the violation of the disclosure mandates or for tampering with an odometer where there is an intent to defraud. *See id.* § 32710(a); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F.Supp.2d 563, 565 (E.D. Va. 2001). In Count VI, however, Harris does not allege anything pertaining the odometer, the mileage of the car, or the intent to defraud. Rather, she contends in that Count that she paid for the car, but Basco did not release the title to her. (Compl. at 4-5.) As presently pleaded, it appears that Harris is trying to allege a breach of contract in Count VI, which would sound in state law. The federal portion of this claim will accordingly be dismissed with prejudice. The state portion of the claim will be addressed below.

does not specify the date she test-drove the car, but states that she ultimately purchased it on April 15, 2022. Even if she test-drove the car (and discovered the alleged mileage difference) on the same day she purchased it, her Odometer Act claim was filed on October 31, 2024, which is more than six months past the expiration of the two-year statute of limitations. *See* 42 U.S.C. § 32710(b).

A statute of limitations generally begins to run when a cause of action accrues. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011). "[T]he accrual date for federal claims is governed by federal law, irrespective of the source of the limitations period." *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520 (3d Cir. 2007) (citing *Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005)). The "standard rule" under federal law is that a claim accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (citation omitted); *see also Haughey*, 646 F.3d at 146-47. It is often the case, then, that a claim accrues – and the statute of limitations begins to run – when a violation or injury actually occurs. This is sometimes referred to as the "occurrence rule." *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 613 (3d Cir. 2015).

But the running of a statute of limitations is not always co-extensive with the date of accrual. *See Haughey*, 646 F.3d at 149 ("[A]ccrual is defined in terms of the objective existence of a viable cause of action, not in terms of whether the limitations clock has started. It happens to be the case that the limitations period generally commences once a claim exists, but a running clock is not the sine qua non of accrual."). Rather, there are "various statutory and judge-made rules that operate to toll the running of the limitations period." *Id*. at 147. "Time that passes while a statute is tolled does not count against the limitations period." *Id*. at 147–48.

One such judge-made rule is the federal "discovery rule." Under that rule, the statute of limitations does not begin to run until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Romero*, 404 F.3d at 222; *see also Haughey*, 646 F.3d at 150 (holding that "the discovery rule . . . operate[s] to toll the running of the limitations period after a cause of action has accrued"). The United States Court of Appeals for the Third Circuit has instructed that, "in the absence of any contrary directive from Congress, courts [should] employ the federal 'discovery rule'" to determine when a statute of limitations begins to run for a federal claim. *Romero*, 404 F.3d at 222; *see also G.L.*, 802 F.3d at 613 (explaining that application of the discovery rule is the "default"); *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (stating that "lower federal courts 'generally apply a discovery accrual rule when a statute is silent on the issue," but noting that the Supreme Court has "not adopted that position").

In light of Harris's admission that she had actual knowledge of the alleged mileage discrepancy during her test drive, there are no grounds for tolling the statute of limitations under the federal discovery rule since she discovered, or with due diligence should have discovered, the discrepancy at that time.[5] The Odometer Act claim will thus be dismissed with prejudice as untimely.[6]

---

[5] The facts as alleged do not support a reasonable basis for equitable tolling, either. *See Lloyd v. Ocean Twp.*, 857 F. App'x 61, 64 (3d Cir. 2021) ("Equitable tolling is generally appropriate where: (1) a defendant actively misleads a plaintiff regarding a cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his claims, but in the wrong forum.").

[6] The Odometer Act claim is not plausible for other reasons as well. First, Harris alleges that she discovered that the car had approximately 1,600 more miles than Basco represented during the *test drive*. Even taking all inferences in her favor, the alleged misrepresentation occurred prior to her purchase and the transfer of the car. Additionally, Harris has not indicated whether Basco is a "transferor" subject to the Act. She states that Basco "operates" a used car dealership, but this does not necessarily indicate an ownership interest in the car. *See Badu v.*

**C. State Law Claims (Counts III, IV, V, and VI)**

Due to the dismissal of her federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Complete diversity is required, meaning that "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006); *see also Lincoln Ben. Life Co*., 800 F.3d at 104 (explaining that, unless there is some other basis for jurisdiction, "no plaintiff may be a citizen of the same state as any defendant" (cleaned up)). It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

"As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint." *Spectacor Mgmt. Grp. v. Brown*, 131 F.3d

---

*Allen*, No. 14-1230, 2016 WL 944142, at *2-3 (E.D.N.Y. Jan. 22, 2016) (noting that the statute applies to a transferor, who must have an ownership interest). She also has not alleged that Basco served as an agent for the transferor by signing an odometer disclosure statement. *See* 42 C.F.R. § 580.3. Most importantly, nowhere does Harris contend that the mileage was misrepresented on any written disclosures required under the Act, that the odometer was tampered with, or that the odometer inaccurately reflected the mileage. *Cf. Francesconi v. Kardon Chevrolet, Inc.*, 703 F. Supp. 1154, 1160 (D.N.J. 1988) (concluding under a prior iteration of the Odometer Act that, before liability can be imposed, the plaintiff must show an odometer discrepancy), *aff'd,* 888 F.2d 18 (3d Cir. 1989).

120, 122 (3d Cir. 1997); *see also* 28 U.S.C. § 1446 ("If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). "The sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (quotations omitted). Punitive damages "must [also] be considered in determining the amount in controversy." *Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, 685 F. App'x 161, 165 (3d Cir. 2017) (citations omitted).

Harris provides a New Jersey address for her residence and a Pennsylvania address for Basco. However, she does not allege a sufficient amount in controversy to meet the required $75,000 threshold.[7] Her Complaint has one concrete dollar amount for her claim of loss—the cost of the car, $8,800. She does not provide any information about the cost of repairs, and it is not clear from the Complaint whether she actually made them. To the extent that she has asserted claims under state consumer protection laws, she could potentially recover treble damages. *See Samuel-Bassett*, 357 F.3d at 399-400 (including potential damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law to calculate amount in controversy for diversity jurisdiction); *Suber v. Chrysler Corp.*104 F.3d 578, 587-88 (3d Cir. 1997) (considering potential trebled damages under the New Jersey Consumer Fraud Act for amount in controversy). On the face of this Complaint, using the purchase price as the actual

[7] As explained above, the smaller minimum amount in controversy for a Magnuson-Moss Warranty Act claim (more than $50,000) has not been met, but the Court's analysis of whether it has diversity jurisdiction here also includes punitive damages and other damages sought in her state law claims. *Coulter*, 685 F. App'x at 165 (punitive damages must be included in diversity threshold calculation); *Samuel-Bassett*, 357 F.3d at 399-402 (considering potential damages from plaintiff's consumer protection claim as part of the amount in controversy).

damages and assuming she were successful on a consumer protection claim, trebled damages could result in a recovery of at most $26,400.[8]

Harris also alleges punitive damages related to the fraud count. In this District, courts assume a punitive to compensatory damages ratio of at least one-to-one when calculating the amount in controversy requirement. *Cf. Goldfarb v. Kalodimos*, 539 F.Supp.3d 435, 450 (E.D. Pa. 2021) ("[T]he amount in controversy requirement is met when a punitive to compensatory damages ratio of at least 1-to-1 exceeds the $75,000 threshold." (citing *Minissale v. State Farm Fire & Cas. Co.*, 988 F.Supp.2d 472, 473-75, 477 (E.D. Pa. 2013)). Under that assumption, Harris would have $17,600 in punitive damages. Thus, Harris's claim of damages clearly misses the $75,000 threshold here. Absent allegations of a sufficient amount in controversy, her state law claims must also be dismissed without prejudice for lack of subject matter jurisdiction.[9]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Harris leave to proceed *in forma pauperis*. The claims under the Odometer Act (Count II and part of VI) will be dismissed with prejudice. The Magnuson-Moss Warranty Act claim (Count I) and the state law claims (Counts III, IV, V, and part of VI) will be dismissed without prejudice. Harris will be given leave to file an amended complaint with respect to the claims dismissed without prejudice if she can cure the

---

[8] Ordinarily, Pennsylvania courts reduce the total sales price by the value a plaintiff had in using the car and other deductions to calculate "actual damages" under the consumer protection law. *See Samuel-Bassett*, 357 F.3d at 401 (relying on Pennsylvania Superior Court cases to provide guidance). Harris has not specified the car's value in her Complaint, so the damages cited here represent a best-case scenario.

[9] It is noted that the statute of limitations for fraud in Pennsylvania, like the one applicable to the Odometer Act claim, is two years. *See* 42 Pa. Cons. Stat. § 5524(7). While Harris will be permitted to file an amended complaint containing her claim for fraud (Count III), this ruling does not foreclose a later ruling dismissing that claim on statute of limitations grounds, should the court have jurisdiction over the claims in an amended complaint.

defects identified above. Alternatively, she may opt to refile her claims in state court, where federal jurisdiction will not be an issue. An Order providing additional instructions on amendment will be entered separately.

**BY THE COURT:**

Kai N. Scott

**KAI N. SCOTT, J.**